**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

In re JERRY FRANKLIN MEADOWS, SR., )    Case No. 06-62050-LYN
and THERESA TUCKER MEADOWS, )
                                                    )
                   Debtors, )
                                                    )

**MEMORANDUM AND ORDER**

This matter comes before the Court on the objection of secured creditor DaimlerChrysler Services North America, LLC, (DaimlerChrysler) to the confirmation of the chapter 13 plan of Jerry Meadows, Sr., and Theresa Meadows ("the Debtors").

For the reasons stated below, the objection will be overruled.

*I. Jurisdiction*

This court has jurisdiction over this matter. 28 U.S.C. §§ 1334(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A)&(E). Accordingly, this court may render a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as directed

1

by Fed.R.Civ.P. 52 which is made applicable in this contested matter by Fed. R. Bankr. P. 9014(c) and 7052.

## *II. Facts*

On December 29, 2006, the Debtors filed a petition initiating the above-styled chapter 13 bankruptcy case. The Debtors scheduled a "2004 Dodge Ram 1500 Pickup" ("the Vehicle") as property of the estate and valued the same at $21,225.00. The Debtors scheduled Chrysler Financial ("DaimlerChrysler") as a secured creditor whose claim was secured by the Vehicle. DaimlerChrysler filed a proof of claimed in the amount of $43,357.93, indicating that the claim was secured by the Vehicle. The Debtors have not objected to the proof of claim. The parties agree that DaimlerChrysler has a duly perfected purchase-money security interest in the Vehicle, the Vehicle is used for the Debtors' personal use and the debt was incurred during the 910-day period pre-petition.

The Debtors' chapter 13 plan provided that they would surrender the Vehicle to DaimlerChrysler in full satisfaction of its claim. DaimlerChrysler filed an objection to the confirmation of the Debtors' plan arguing that 11 U.S.C. § 1325(a)(5) requires that the plan provide for the payment of any deficiency as an unsecured claim in a pro rata amount commensurate with other unsecured claims.

DaimlerChrysler filed a motion for relief from the automatic stay seeking to repossess the Vehicle. That motion was granted.

## *III. Discussion*

The issue is whether a chapter 13 debtor may surrender collateral in full satisfaction of a secured creditor's claim when the value of the collateral is less that the amount of the claim, the

collateral is a vehicle purchased during the 910-day period pre-petition, the vehicle is for the debtor's personal use, and the creditor's interest is a purchase money security interest (a "910 Vehicle").[1] The answer lies in the effect of a modification to Section 1325(a)(5)[2] by an unnumbered, unlettered BAPCPA[3] revision appended to the end of Section 1325(a). The appended paragraph is referred to as "the Hanging Paragraph"[4].

---

[1] The analysis also applies to collateral other than a vehicle if the collateral is purchased in the one-year period pre-petition and the creditor takes a purchase-money security interest in the collateral.

[2] For cases filed on or after October 17, 2005, Section 1325(a)(5) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if--
    (5) with respect to each allowed secured claim provided for by the plan--
        (A) the holder of such claim has accepted the plan;
        (B)(I) the plan provides that--
            (I) the holder of such claim retain the lien securing such claim until the earlier of--
                (aa) the payment of the underlying debt determined under nonbankruptcy law; or
                (bb) discharge under section 1328; and
            (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
        (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
        (iii) if–
            (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
            (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
        (C) the debtor surrenders the property securing such claim to such holder;

[3] Section 1325(a)(5) was revised and became effective on October 17, 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). See Pub. L. No. 109-8, 119 Stat. 23 (2005).

[4] The Hanging Paragraph provides:

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

3

In order to determine the effect of the Hanging Paragraph on Section 1325(a)(5), it is first necessary to examine the interpretation and effect of Section 1325(a)(5) prior to the date that the BAPCPA became effective.

A.  Pre-BAPCPA Section 1325(a)(5).

Under chapter 13 bankruptcy cases before the BAPCPA became effective, Section 1325(a) provided that the Court should confirm a chapter 13 plan of reorganization if six requirements were met.  Section 1325(a)(5) required that one of three events must occur with respect to each allowed secured claim before the plan could be confirmed.  With respect to each allowed secured claim, either (1) the holder of the claim must have accepted the plan, or (2) the plan must have provided that the debtor would retain the collateral, the creditor would retain its lien, and the debtor would pay the entire amount of the amount of the secured claim during the pendency of the plan; or (3) the plan must have provided for the surrender of the collateral to the creditor.  It is the latter two options that are relevant to this analysis.

*Retention of the Collateral.*  If a debtor elected to retain the collateral, the plan could only be confirmed if it provided for the payment in full of the amount of the allowed secured claim during the pendency of the plan.  The amount of the secured claim would be determined under Section 506(a)[5], which provides that an allowed claim secured by a lien on property of the estate

---

[5]     Prior to the effectiveness of BAPCPA, Section 506(a)  provided:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

is a secured claim to the extent of the value of the creditor's interest in the estate's interest in the property and is an unsecured claim to the extent that the secured claim is less than the value of the creditor's interest in the property. In other words, Section 506 divides a claim secured by property of the estate into (1) a secured claim equal in amount to the value of the collateral and (2) an unsecured claim in an amount equal to the difference between the total amount of the and the value of the collateral.

Section 506(a), in conjunction with Section 1325(a)(5)(B), permitted a debtor to "cram down" a secured creditor's claim, that is, the debtor's plan could provide for the payment of the secured claim in full and the payment of the unsecured claim in an amount equal to the pro rata share of the payments made to all unsecured claims.[6] This treatment was made possible by the existence of Section 506(a).[7]

*Surrender of the Collateral.* Under pre-BAPCPA law, if a chapter 13 debtor surrendered the collateral instead of retaining it, Section 506(a) would provide for the bifurcation of the claim into two claims, one secured and one unsecured, and would provide a mechanism for the liquidation of each. The creditor would either file an estimated unsecured deficiency claim or would sell the collateral as prescribed under state law and then file an unsecured claim in an

---

The BAPCPA re-designated the above as 506(a)(1) and added a second paragraph, Section 506(a)(2). The addition of Section 506(a)(2) does not alter this analysis.

[6]    If the debtor retained the vehicle, the value of the vehicle was deemed to be the replacement value of the vehicle to the debtor. See Assocs. Comm. Corp. v. Rash, 530 U.S. 953 (1997).

[7]    Section 506(a) has no independent significance; its significance lies solely in its role in facilitating the application of other sections of the Bankruptcy Code. Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy "Determination of Secured Status".506.03[4][a][iv], p. 506-28 (15th Ed 2007). Prior to the enactment of the Hanging Paragraph, Section 506(a) provided a mechanism to determine the amount of a secured creditor's secured claim. Id. at 506-30 (Citing Till v. S.C.S. Credit Corp., 542 U.S. 465, 124 S. Ct. 1951, 1956, 156 L.Ed. 2d 787 (1997)).

amount equal to the deficiency. In either case, the unsecured portion of the claim would be paid pro rata with other unsecured claims. In summary, prior to the effectiveness of the BAPCPA, Section 1325(a)(5)(C), in conjunction with Section 506(a), permitted a debtor to surrender the collateral, but required that the creditor be allowed an unsecured claim equal to the differential between the value of the collateral and the total amount of the creditor's claim.

B.  Post-BAPCPA Section 1325(a)(5).

The BAPCPA added language to Section 1325(a)(5)(B), but this addition does not affect the path of this inquiry. The relevant change is the addition of the Hanging Paragraph which provides that, "[f]or purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the collateral is" a 910 Vehicle. What then is the effect of removing Section 506 from the analysis for 910 Vehicles under Sections 1325(a)(5)(B)&(C)?

*Retention of the Collateral.* There is no dispute regarding the post-BAPCPA treatment of a 910 Vehicle if a debtor elects to retain the vehicle under Section 1325(a)(5)(B). The debtor may not bifurcate the claim as was possible pre-BAPCPA. The elimination of Section 506(a) from the analysis requires the claim to be treated as secured in an amount equal to the full amount of the claim. Because the claim is fully secured, the debtor is required to pay the claim in full during the pendency of the plan if he or she wishes to retain the 910 Vehicle.

*Surrender of the Collateral.* Under the pre-BAPCPA law, if a chapter 13 debtor surrender the collateral, the creditor was entitled to the proceeds from the sale of the collateral and to an allowed unsecured claim in an amount equal to the difference between the amount of the proceeds and the total amount of its claim. What then is the effect of removing Section 506 from the analysis for 910 Vehicles? The answer is that the creditor is no longer entitled to an

unsecured claim in the amount of the deficiency.

By removing the application of Section 506(a) to Section 1325(a)(5), the Hanging Paragraph eliminates the mechanism by which debtors, creditors, trustees and Courts might bifurcate a claim secured by collateral of a value less than the amount of the claim.    The *effect* in Section 1325(a)(5)(B), when the debtor retains the collateral, is that the claim is treated as a fully secured claim.   The *result* is that the debtor must provide for the payment of the claim in full.

The *effect* in Section 1325(a)(5)(C), when the debtor surrenders the collateral, must necessarily be the same.   The claim must be treated as a fully secured claim.[8]  And if the claim is fully secured by the collateral, the *result* is that surrender of the collateral must necessarily constitute the payment of the claim in full.

As one court reasoned,

> If the claim may not be bifurcated when the debtor proposes to retain the property and pay the claim over time, pursuant to § 1325(a)(5)(B), neither should it be bifurcated when the debtor proposes to treat the claim by surrender of the collateral, pursuant to § 1325(a)(5)(C). Allowing the secured creditor to assert a deficiency claim after disposition of the vehicle, would permit the very thing which the hanging paragraph prohibits, which is bifurcation of the claim. Denial of the deficiency claim upon surrender recognizes the claim as fully secured, a result consistent with the outcome when the debtor chooses to retain the collateral and pay the claim.

In re Nicely, 2006 WL 2571973, *2 (Bankr. W.D.Mo. 2006).

Most of the courts that have considered this issue have agreed with the Nicely Court. See, e.g., In re Ezell, 338 B.R. 330 (Bankr. E.D.Tenn. 2006),  In re Evans, 2006 WL 2620342 (Bankr. E.D.Mich 2006), In re Nicely, 2006 WL 2571973 (Bankr. W.D.Mo. 2006),  In re

---

[8] HSBC agrees with this point.  "The clear result of the exclusion of a 910-day claim from the application of §506 is that its allowed secured claim is simply the full amount of the debt."  Respondent's Memorandum, p.  6, lines 2-3.

Osborn, 2006 WL 2457933 (Bankr. W.D. Mo. 2006), In re Sparks, 346 B.R. 767 (Bankr. S.D. Ohio 2006), and In re Brown, 346 B.R. 868 (Bankr. N.D.Fla. 2006).

A few courts have disagreed with the reasoning in Nicely and have allowed the creditor an unsecured claim in the amount of the deficiency.  See, e.g., In re Zehrung, 351 B.R. 675 (W.D. Wis. 2006) and In re Duke, 345 B.R. 806 (Bankr. W.D.Ky. 2006).   After reviewing the majority opinions, the Zehrung Court reasoned as follows:

> These [majority] holdings, however, ignore the fact that "allowed secured claim" in § 1325(5) is used in the sense that the claim is allowed under § 502 and secured by some collateral, not in the § 506 sense of the term. A creditor taking possession of collateral does not depend upon § 506 to determine the value of its unsecured claim. Section 506 has application only when the estate retains an interest in the collateral, a circumstance which disappears with surrender. Rather, when collateral is surrendered pursuant to § 1325(5)(C) the amount of the remaining unsecured claim is determined by state law, uniform commercial code sections 9-610 to 9-624. See Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1325.06[4], 15th ed.2006. The creditor's rights being unmodified by § 506, it is entitled to its state law right to liquidate the collateral and retain an unsecured claim for the balance due. In re Duke, 345 B.R. 806, 809 (Bkrtcy.W.D.Ky.2006).

Zehrung, 351 B.R. at 678.

The reasoning in Zehrung does not address the fact that a claim secured by collateral must be bifurcated into an allowed secured claim and an allowed unsecured claim before the amount of the unsecured claim may be determined.  Without bifurcation, there is no allowed unsecured claim.  If there is no unsecured claim, then the issue of liquidation of that unsecured claim is rendered moot.

In the second sentence, the Zehrung Court states that a creditor taking possession of its collateral does not depend upon Section 506 to determine the value of its unsecured claim.   This statement does not address the issue.  It is the allowance of the unsecured claim that is in dispute in bankruptcy, not the amount of the unsecured claim if it is allowed.

8

Section 506(a)(1) provides two functions. First Section 506(a)(1) provides that a claim secured by collateral is to be bifurcated into an allowed secured claim and an allowed unsecured claim.[9] Second it provides that manner by which the value of the collateral and the amount of the unsecured claim are to be determined.[10] In fact, it is the second sentence that permits secured creditors to use the procedures promulgated in the Uniform Commercial Code to value the collateral, but only after the claim has been bifurcated pursuant to the first sentence of Section 506(a). Valuation is important because Section 506(a) "requires the bifurcation of an ostensibly secured claim into 'secured' and 'unsecured' portions, if the value of the creditor's security is less that the amount of its claim." Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy "Determination of Secured Status" ¶506.03[4], p. 506-21 (15th Ed 2007). Without bifurcation and the allowance of an unsecured claim, valuation of the collateral is not required before a post-BAPCPA chapter 13 plan may be confirmed.

The Zehrung Court also states that Section 506 has application only when the estate retains an interest in the collateral, a circumstance that disappears with surrender. Even if true, this statement does not support the allowance of an unsecured claim in the amount of the deficiency when Section 506 is removed from the analysis before the collateral is surrendered. As noted, under pre-BAPCPA law, it was the application of Section 506 while the collateral was property of the estate that permitted bifurcation of a claim into an allowed secured claim and an

---

[9] "Subsection (a) of [Section 506] separates an undersecured creditor's claim into two part: he has a secured claim to the extent of the value of his collateral; and he has an unsecured claim for the balance of this claim." H. R. Rep. No. 95-595, 95th Con., 1st Sess. 356 (1977).

[10] The second sentence of Section 506(a) provides that "[s]uch value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

9

allowed unsecured claim. It was not the removal of Section 506 from the calculus after the debtor surrendered the collateral that gave rise to an allowed unsecured claim. The determination of the character and amount of a creditor's claim is made while the property is property of the estate under Section 506(a), if that section is applicable.

Finally, the interpretation of the effect of the Hanging Paragraph in Zehrung is not consistent with the established interpretation of Section 1111, which also provides, under certain circumstance, for the suspension of the application of Section 506(a). Under Section 1111, a nonrecourse loan is treated as a recourse loan, unless the creditor elects to retain the nonrecourse character of the loan. If the creditor elects to have the claim treated as a nonrecourse loan, "then notwithstanding section 506(a) of [Title 11], such claim is a secured claim to the extent that such claim is allowed." 11 U.S.C. § 1111(b)(2).

In essence, Section 1111(b)(2) states that a nonrecourse claim is, by definition, a claim to which Section 506(a) does not apply. That is, without the application of Section 506(a), a claim that is secured by property of the estate is to be treated as nonrecourse claim which, by its very definition, is a secured claim which cannot give rise to a deficiency claim.

If a creditor with a claim secured by property of the estate makes an election under Section 1111(b)(2) and thereby eliminates the application of Section 506(a), surrender of the collateral satisfies that creditor's claim in full. This holding of law is supported by a number of courts and a leading treatise on bankruptcy. "Although the language of section 1111(b) does not refer specifically to abandonments, if property [securing a claim for which the creditor makes an 1111(b) election] is abandoned or returned to the secured party, the nonrecourse deficiency claim should disappear." Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy

§1111.03[2][b][ii] (15th Ed. 2007) (Citing In re Tampa Bay Assocs. Ltd., 864 F.2d 47, 50 (5th Cir. 1989);  In re 680 Fifth Ave. Assocs., 156 B.R. 726, 730 (Bankr. E.D.N.Y. 1993); In re Union Meeting Partners, 160 B.R. 757, 770 (Bankr. E.D. Pa. 1993); In re Mesa Business Park Partnership, 127 B.R. 144, 148-49 (Bankr. W.D. Tex. 1991); and In re National Real Estate Ltd. Partnership II, 104 B.R. 968, 973-75 (Bankr. ED. Wis. 1989)).

The analogy of election under Section 1111(b)(2) and Section 1325(a) as modified by the Hanging Paragraph continues if the debtor elects to retain the collateral. By electing to be fully secured under Section 1111(b)(2), the creditor can require payment of the full amount of the claim, regardless of the value of the collateral. Valuation is important because Section 506(a) "requires the bifurcation of an ostensibly secured claim into 'secured' and 'unsecured' portions, if the value of the creditor's security is less that the amount of its claim." Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy "Claims and Interests" ¶1111.03506.03[3][c], p. 1111-30 (15th Ed 2007).  If a chapter 13 debtor elects to retain collateral under Section 1325(a)(5)(B), then he or she must pay the entire amount of the creditor's claim, the value of the collateral notwithstanding.

The effect of the Hanging Paragraph and an election under Section 1111(b)(2) are the same. In each case the creditor has a claim against the debtor. In each case, the claim is not bifurcated. In each case, the creditor only has a secured claim. In each case, if the debtor wishes to retain the collateral, he must provide for payment of the creditor's claim in full in the plan. In each case, surrender of the collateral fully discharges the debt underlying the claim.

The respondent argues that "Section 506 does not define 'allowed secured claim', but is strictly a method of valuing an allowed secured claim." Citing Dewnump v. Timm, 502 U.S.

410, 414-415, 112 S.Ct.  773, 116 L.Ed.2d 903 (1992).  The respondent argues that the result of not being subject to Section 506 is that the allowed secured claim is the full amount of the debt.  This is true.  The claim is a secured claim allowed in the full amount of the debt.  It follows then that the surrender of the collateral must necessarily extinguish the debt in full.

The respondent also asserts that it would lead to inconsistent and nonsensical results to permit the debtor to surrender the collateral in full satisfaction of its claim.  It asserts that such a result would mean that a creditor with a non-purchase-money security interest would retain its right to a deficiency, but a creditor with a purchase-money security interest would not.  This is true, but the Court finds the result neither inconsistent or nonsensical.  The statement is necessarily based on the premise that a creditor with a purchase-money security should be treated better than a creditor without such a security interest.  The plain language of the statute reveals that Congress does not necessarily believe that such is always the case.

The respondent additionally asserts that the language under consideration is ambiguous and that its position is more consistent with Congressional intent.   This Court does not find the language ambiguous.   When the language of a statute is consistent, there is no need to divine the intent of Congress.   The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."  U.S. v.  Ron Pair Enterprises, Inc., 489 U.S. 235, 242 (1989) (Quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982))

## ORDER

For the reasons stated above, the objection of DaimlerChrysler to the confirmation of the debtors' chapter 13  plan is overruled.

12

So ORDERED.

Upon entry of this Order the Clerk shall forward a copy to David Cox, Esq., counsel for the debtors, Rebecca B. Connelly, Esq., the chapter 13 trustee, and Steven L. Higgs, Esq., counsel for DaimlerChrysler.

Entered on this  13th  day of July, 2007.

_____
William E. Anderson
United States Bankruptcy Judge